Formella v. Brennan Morning, Your Honors. This is a Title VII and H discrimination appeal from the Grant of Summary Judgment by the District Court. As a preliminary matter, there was a timeliness issue, which I'll address. And then the questions presented here are whether or not a reasonable jury could find that the plaintiff established race discrimination, age discrimination, and whether the trial judge made credibility findings in some of those areas, as well as credibility findings in Grant of Summary Judgment, where there was a timeliness issue. As far as timeliness goes, I'd like to just mention, we deal with this at our brief at pages 9 through 10 and reply pages 1 through 2. The District Court found in our favor that the complaints made by Mr. Formella were, in fact, timely. Because, even though he was told by INC Brady his report to apply competitively for a vacant position on a different tour, which would pay $7,000 more a year, he did not tell Mr. Formella he was not selected for the position until after the June 20, 2011, interviews that Mr. Brady conducted, which would be less than 45 days before. Mr. Formella filed his informal EEOC complaint on July 4, 2011. Wouldn't it have been very odd for Mr. Formella to file an EEO complaint while the decision was still pending? It would have been odd. Is there any indication from the agency's EEO office that they were splitting the claim between the request for the non-competitive appointment and the competitive appointment? Your Honor, I'll have to look at a note for that, but the USPS EEO office did, in fact, rule on this issue on the merits. So it's really a non-issue for the court because it's been decided on the merits and the District Court properly moved on and just said, let's just consider it on the merits, which she did. The factual background was that Sergeant Formella had been on tour one until his retirement in 2008. As we all know what happened in 2008 financially, he decided that discretion being the better part of valor, he better go back to the post office and work full time. So he tried to withdraw his retirement papers. It was a big to-do and he finally won in an administrative proceeding and got a position back. But he was placed on tour two, which does not have an opportunity for overtime pay, which I think everyone knows our police officials look forward to positions that pay overtime. And in this case, it was a significant amount of money. Mr. Moran, one of the debates we have is about at least whether this was an adverse action at all because he apparently would have stayed in the same grade and it would just have been a different schedule. Am I understanding correctly, you think we ought to approach this basically as if it were a denial of a promotion? That's correct. It's kind of halfway in between because of the pay differential. It's a significant pay differential under this court's case law. And I believe that that differential in and of itself constitutes the adverse action. Especially in this case where we have alleged that, and for purposes of this appeal, one must take as correct, that Sergeant Formella made it clear from his return in 2009 that he wanted off of tour two and he wanted a tour that paid overtime. And as we reflect in the briefs, it's certainly a question, there are some serious questions as to why INC Brady, and they have sort of a pseudo-military arrangement there, INC Brady decided to go and stick with the compete action for a position that Sergeant Formella was already in. And had many years of experience in and it's uncontested that he had the qualifications for the position where there was a non-compete transfer two years earlier into Sergeant Formella's old position. And the record also suggests that the district court made several credibility findings such as choosing not to believe Sergeant Formella's version of events. And I think that's at page, well there's one credibility finding set forth at page 19 of our brief. She chose to disbelieve Sergeant Formella's testimony in finding that his argument that Williams did not harass Mel before filing an EEO complaint in October 2011. And then she actually used the words credible, she found INC Brady's reasons for going the competitive route to be credible. And that's a jury question at its essence. The jury could very easily choose to believe Sergeant Formella given the pattern and practices in this particular case. Mr. Moran, could I ask you about, as I understand your case is built heavily on trying to compare the plaintiff to Ms. Wyatt's selection to replace him from the post that he retired from, right? Correct. What do we have by way of admissible evidence in the record about Ms. Wyatt's selection? Well what we have in the record is that there was a vacancy, there is a, INC Brady testified that he did not recall whether or not he had posted a vacancy notice regarding Sergeant Wyatt. We do know that Sergeant Wyatt was significantly younger than Sergeant Formella. And that in terms of the race parts of the case, we know that Captain Williams and Sergeant Wyatt and Sergeant Formella's, the person chosen competitively were African American. Sergeant Formella was the only Caucasian sergeant. There were four sergeants. Yeah, but to compare in essence the Wyatt appointment to what Mr. Formella was asking for by way of a non-competitive appointment. The district court found that Sergeant Wyatt was not similar enough to meet the comparison test. And the answer to that is simply that given postal policy that at any point in time, including even after the competitive process was over with, Sergeant Formella could have been placed in that position. It shows that there's really, whether or not there's a vacancy posted or not, it shows that the use of the process, you know, they're substantially similar. Let me be more specific. Sure. Maybe I'm misunderstanding this, but I had thought that Wyatt, that management took the approach that they had reached out to Wyatt and moved her to that position on their own initiative. And that Mr. Formella disagrees with that.  I think that Sergeant Wyatt indicated that she would like to move to tour one. She was in tour two, which is what Mr. Formella was in. And there was a vacancy and that Captain Williams put her in it without any further ado. I'm asking for admissible evidence as to the similarities or differences between the way those two transactions were handled. I know one was non-competitive. The other was ultimately handled as a competitive one. But whose initiative may be important, and I'd like to know if there's admissible evidence about that, supporting Formella's version of it. Well, yes, there is the testimony of INC Brady, who testified that he may or may not have posted a vacancy for the position that Wyatt took. But our position is, in summary judgment, these inferences have to be drawn for Officer Sergeant Formella, not against him. I believe that Sergeant Wyatt testified at deposition that she just indicated her interest in the position. And it was vacant and she was a sergeant, and it's a sergeant's position. These are not promotions in that sense. In fact, Sergeant Formella, when he asked for the vacancy in tour three, he was not looking for a promotion per se, but he was already in that position. But it was a position that paid $7,000 or more a year more, and the hours were better. I have to watch my time. Your Honors, I'd like to reserve my remaining time for rebuttal, and I'll try to go back to that argument. Thank you, Mr. Moran. Mrs. Kelly? May it please the Court, Counsel. Judge Hamilton, if I could first address your question regarding Sergeant Wyatt. Sergeant Wyatt was told by Captain Williams that she was going to be changing shifts. Sergeant Formella had retired, and they needed a sergeant on each shift. She did not ask for it, and the admissible evidence is in the record from Captain Williams himself. He checked with the assistant inspector in charge, Dave Golan, and he assigned her to a different shift. She did not ask for it. Is this Williams' deposition? It is Williams' affidavit. I don't have the record site. It's Exhibit 22, I believe, of Hour 56.1. I'm sorry, I don't have the record site on appeal. Close enough. We know where to go. Brady did testify that he may or may not have posted it, but that makes a difference here. Without having a posted position for Wyatt to apply to, she cannot be compared to Formella here. Further, she did not ask for a transfer. We have to remember this case is not about a promotion. This is about a sergeant who didn't get a shift he wanted. I know you've tried to portray it that way, but we've got evidence that there's at least a noticeable salary, or compensation difference here. And counsel call that overtime. It's not overtime. It's called premium pay for after 6.30 at night. It's more akin, I believe, to a bonus to make things equal, to make things equal for a shift that folks usually don't want to work, nights and weekends. What's important here is there's no evidence that plaintiff has provided that age, race, or retaliation played any role in the Postal Service's actions. Ms. Kelly, how much do you rely on the settlement that the agreement to take the Tour 2 would eliminate any expectation of premium pay? When he came back from his first retirement, as we'll call it, he's retired again. When he came back from his first retirement, he did agree to serve on Tour 2, correct? I don't think that that agreement says that in perpetuity he would have to stay on Tour 2. I don't think that we can rely on that in that way. It wouldn't be fair to do that. In terms of the timeliness, if I could briefly address that. The issues accepted for investigation did not include the non-competitive claim. It was included in Mr. Formella's multi-page EEO complaint. It was included as a background fact. Counsel has suggested that perhaps the Postal Service didn't raise any issue about timeliness. Well, the Postal Service could not respond to an issue that was not accepted for investigation. Why would the Postal Service respond to an issue that was not before that tribunal? Did the EEO split the claim the way you're talking about? I believe to the extent that the EEO didn't issue a decision. We have a final agency decision. That's what I mean. The final agency decision from the Postal Service did not really address the non-competitive claim. In fact, brought it up in the same way that Mr. Formella did in calling it background facts and getting to the competitive claim. Given the way he's trying to make this case by circumstantial evidence, by comparing himself to Wyatt, and therefore trying to compare the way the overall appointment was handled, I frankly just have a lot of trouble splitting it that way because it's inevitably a part of his evidence. The problem is that it's different comparators for each one, so we have to split them up. He started on May 11, 2011, asking for a non-competitive transfer. He was told that very day that he did not get that transfer. He knew he did not get it. It was not going to be a non-competitive transfer. 45 days should start ticking. To the extent that he is a comparator, he has completely and always referred to Sergeant Wyatt. In the competitive process, below he referred to Sergeant Fields who received the competitive position. He was a police officer who was elevated to sergeant. So we have to split them because it's a different analysis. We have different comparators. And on appeal, he doesn't actually address Sergeant Fields at all. Formella seems to abandon the competitive claim on appeal. He never talks about the similarly situated person of Sergeant Fields who received the job. There was a question regarding age. There's nothing in the record that gives exact ages. We don't know that all the applicants for the competitive claim, to the extent that that's alive, all of them are over 40. Counsel talks about a substantial age difference. We don't have the age. Didn't the agency's EEO decision find that there were substantial age differences? The words were used about the age differences, but I don't think we can rely on that now without knowing their exact ages. We have to go over all that again in court? There should be something in the record saying what those ages are. I don't think this court has to find that that is a finding that you must rely upon. There's nothing in the record that tells ages. You think the ALJ got that wrong? There was no ALJ decision here. Well, sorry, what am I? The final agency decision. The final agency decision, sorry. That sounds like a fairly elementary question, and we can't trust that decision on that point? Without having the ages in there, everyone's over 40 in that protected class. And I would point out for appeal purposes, the age argument is one page of appellant's brief, and I think that is essentially abandoned here. No, because it's parallel to the race claim. It is parallel. Except it's a little stronger because it doesn't have to worry about the reverse discrimination issue. Correct, and even if you find that, therefore, plaintiff makes out a prima facie case, the plaintiff still has not shown that age was the reason to say that it was a lie or reasons for selecting Sergeant Fields to the extent that he doesn't name Sergeant Fields as a comparator on appeal. We have to look at that as well. Even if the court wants to find that he satisfies the prima facie case, he has not established that the reasons that Inspector in Charge Brady gave for selecting Fields over Fermella had anything to do with age. In fact, we have, the record shows us that Brady himself did not know their ages. At Record 45, at page 712, the plaintiff admits that Brady did not know the other two candidates' ages or retirement eligibility. He only admits that Brady must have known his own because he'd already retired and he came back. But he admits in 56.1 response that, indeed, Brady did not know these people's ages or retirement eligibility, and, therefore, he cannot show pretext, cannot show that they were selected because of age. If there are no further questions, we ask that the district court's decision be affirmed. Thank you, Mr. Chairman. Mr. Moran. Judge Hamilton, to go back to what you were originally asking about, there is a dispute of fact as to whether Wyatt did ask for the noncompetitive transfer. Fermella, in his deposition, testified that, to his knowledge, she did ask, and I think he believed he did. How does he have personal knowledge of that? Oh, Wyatt, I believe he said Wyatt told him. She's not a, that's hearsay. Well, it would be an admission against interest, too. Not by her. She's not an agent, speaking in that capacity. Anything else? Well, I'll go check the record. That's why I was asking this. Yeah, I don't have it with me, but I will look, and if it is, I'll submit a letter to the court. As far as whether this vacancy being posted or not, U.S. Postal Policy says it's irrelevant whether it's posted or not. We do point out that ship premium is regular extra pay. It's neither a bonus nor overtime. I stand corrected. And as counsel for the government noted, if you get one of these tours that has this, that's what you get, you're guaranteed this additional money as a premium, and it's in their policies. As far as the timing issue goes, Formella doesn't know he won't get the job until the position is actually filled. He just doesn't know, so, you know, I don't think he was required to make any further actions at that time. A month later, when he finds out he doesn't get the job, he certainly. By the time he asked for the noncompetitive transfer, it had already been posted, right? It had posted, right, but that's irrelevant. That's how he found out about it. Right, that's correct. And EEOC did not bifurcate these issues in terms of age and race. They did find a substantial age difference on their facts. The question as to whether or not both parties were over the age of 40 is not supported by the case law. That's not how we handle age discrimination. Brady knew that Formella had years of experience because Formella was a sergeant, I believe, when Brady came over there as INC. The other things that Mr. Formella had complained about, which show these bits and pieces that show retaliation, for example, is the fact that he's the only sergeant who was required to go out on the streets. He was written up for coming to work late, and yet the record reflects that Captain Williams knew that he had placed Formella on a schedule where Formella was to report to work at 10 o'clock in the morning, not at the regular time of 8 o'clock in the morning. There are just literally dozens of these kinds of actions by Captain Williams. The embarrassment treatment, the fact that Captain Williams penalized Sergeant Formella on returning from a sick leave, causing Formella to lose 40 hours of pay, and then he had to finally use his own sick pay to recoup that. And yet there's postal policy. That was an approved leave that he was on, and he returned. And so the particular format of the return to work was never shown that that was necessary in order to get back on the job. We never received the matrix which INC Brady was required to put together to show how he reached his competitive results, and that was never produced. And INC Brady admitted that he listened to their statements about the job, and he just concluded that, well, I'm going to go with this younger guy, even though I have somebody who I definitely feel is qualified in the position. I would ask that the case be reverse and remanded for further proceedings. Thank you. Thank you, Mr. Ryan. Thank you to all counsel. The case is taken under advisement.